# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

TYRONE JONES,          )
                                  )
       Plaintiff,         )
                                  )
v.                          )    Case No.: 2:18-cv-0512-JEO
                                  )
BANK OF AMERICA, N.A., et al.,  )
                                  )
       Defendants.     )
                                  )

## <u>MEMORANDUM OPINION</u>

In this action, Plaintiff Tyrone Jones has alleged a variety of federal and state law claims against Defendants Bank of America, N.A. and Carrington Mortgage Services, LLC ("Carrington"). (Doc. 18). The claims are based on allegations that Defendants falsely reported that Jones was in default on a mortgage loan and wrongfully initiated foreclosure proceedings on his property, among other things. (*Id.*). Defendants have moved for judgment on the pleadings. (Doc. 29). For the reasons that follow, the court[1] concludes that the motion is due to be granted in part and denied in part.

---

[1] The action was originally assigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and the court's general order of reference dated January 2, 2015. The parties have since consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. 14).

# I.    PROCEDURAL HISTORY

Jones filed this action in the Circuit Court of Shelby County, Alabama, asserting fourteen separate claims against Defendants: negligence, wantonness, unjust enrichment, wrongful foreclosure, slander of title, breach of contract, fraud, false light, defamation/libel/slander, violation of the Truth in Lending Act, violation of the Real Estate Settlement Procedures Act, violation of the Fair Credit Reporting Act, violation of the Fair Debt Collection Practices Act, and a claim for declaratory relief. (Doc. 1-1 at 2-29). Defendants removed the action to this court and then moved to dismiss all of the claims contained in the complaint, or, to the extent any claims remained, moved for a more definite statement of those claims. (Docs. 1, 4).

In response to the motion to dismiss, Jones filed a motion for leave to file an amended complaint, noting the different pleading standards in federal and state court. (Docs. 8, 9). The court granted Jones's motion to file an amended complaint, (doc. 10), and after two extensions, (docs. 11 & 16), Jones filed his amended complaint on May 21, 2018.[2] (Doc. 18). The amended complaint contains a more detailed set of factual allegations and deleted three claims (wrongful foreclosure, slander of title and fraud), but otherwise the differences

---

[2] In light of the filing of the amended complaint, Defendants' original motion to dismiss was deemed moot. (Doc. 26).

between the two complaints are minimal.  (Compare Doc. 1-1 at 2-29 with Doc. 18).

On July 9, 2018, Defendants filed an answer to the amended complaint. (Doc. 24).  Defendants then filed the instant motion for judgment on the pleadings, reasserting most, if not all, of the same arguments presented in their original motion to dismiss.  (Doc. 29).  The motion has been fully briefed and is now ripe for decision.

## II.    STANDARD OF REVIEW

Defendants have moved for dismissal pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Under Federal Rule of Civil Procedure 12(c) "[a]fter the pleadings are closed . . . any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001) (citation omitted). The standard for a motion for judgment on the pleadings is identical to the standard applicable when a complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6); *see also Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087, 1089 (11th Cir. 2005).

Rule 12(b)(6) authorizes the dismissal of all or some of the claims in a complaint if the allegations fail to state a claim upon which relief can be granted.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008). However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Nor is it proper to assume that a plaintiff can prove facts he has not alleged or that the defendants have violated the law in ways that have not been alleged. *Twombly*, 550 U.S. at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 526 (1983)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*, 550 U.S. at 555

(citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level. . . ." *Id*. Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" i.e., its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citations omitted).

## III.   STATEMENT OF FACTS

Jones alleges that he bought property located at 128 Dallas Lane in Montevallo, Alabama, financed the purchase with United Wholesale Mortgage, and executed a mortgage with Mortgage Electronic Registration Systems, Inc. ("MERS"), "acting solely as nominee for United Wholesale Mortgage." (Doc. 18 ¶ 5). The loan was later "assigned" to Bank of America and then to Carrington. (*Id*. ¶ 8). More specifically, Jones seems to allege that MERS sold and/or assigned the loan to Bank of America, and Bank of America also initially serviced the loan. (*Id*. ¶ 7). Then Carrington became the servicer of the loan on July 11, 2017. (*Id*. ¶ 7, 16). The amended complaint also alleges that at some time later, the loan was assigned to Carrington. (*Id*. ¶ 8, 20). Jones "disputes the validity" of the assignments, (*id*.), but provides no factual basis for this allegation and does not attach a copy of any allegedly defective or invalid assignments to the amended complaint or in opposition to judgment on the pleadings.

On July 22, 2015, Jones entered into a loan modification agreement with Bank of America. (*Id*. ¶ 10). Jones signed all the paperwork and returned it to Bank of America as instructed. (*Id*.). Then, in September 2015, Jones attempted to make his payment under the loan modification, but Bank of America refused the payment "because its computer system still had his account in a delinquent status." (*Id*. ¶ 11). Jones later called about the problem and Bank of America told him that it had not implemented the loan modification package "because his wife filed for chapter 13 Bankruptcy and she lived at the address." (*Id*. ¶¶ 11, 12). Jones told Bank of America that he had not filed for bankruptcy and his wife was not on the mortgage loan account. (*Id*. ¶ 12). Nevertheless, Bank of America insisted that Jones' wife "give him a quitclaim deed divesting her of any interest in the property, and that the Bankruptcy court approve the loan modification and confirm that the wife had no interest in the property." (*Id*.).

At some later time, Bank of America filed a motion with the bankruptcy court "seeking an order from the court approving the loan modification agreement and confirm[ing] that she had no interest in said property." (*Id*. ¶ 13). The bankruptcy court entered the order on April 26, 2016. (*Id*. ¶ 14). Bank of America, however, "failed and refused to implement the loan modification that it had agreed to do." (*Id*.).

During that time period, from August 2015 until July 2017, Bank of America refused to take payments from Jones, added unauthorized interest charges, fees and expense to Jones' mortgage debt. (*Id*. ¶ 15). Jones continued to call and inquire about his loan modification, but did not get any answers from Bank of America. (*Id*.).

On July 11, 2017, Bank of America "purportedly transferred servicing right[s] as to the loan to Carrington." (*Id*. ¶ 16). After Jones learned of the transfer, he called Carrington to tell them about the loan modification and that it had not been implemented. (*Id*.). Carrington "promised to look into it, but failed to do so." (*Id*.).

On October 1, 2017, Carrington initiated foreclosure proceedings on Jones's property "based on the erroneous and improper records which Bank of America sent to Carrington." (*Id*. ¶¶ 17, 18). Jones repeatedly called Carrington to explain that he had been given a loan modification by Bank of America that had not been implemented, but Carrington "refused to look into it any further, refused to implement the loan modification agreement just as Bank of America had failed to do, and pushed forward with the foreclosure on the property." (*Id*. ¶ 17). According to Jones, Carrington began foreclosure proceedings on his property despite knowing that "he was not in default as his account was current at the time of the acceleration because of the loan modification agreement." (*Id*. ¶ 18).

The foreclosure sale was reported to the national credit bureaus, which damaged Jones's reputation and credit. (*Id.* ¶ 19). Additionally, the foreclosure sale date was published in the newspaper in November and December 2017 and January 2018, and included false information regarding his alleged default. (*Id.*).

On January 16, 2018, Jones sent a qualified written request ("QWR")[3] to both Carrington and the attorney for Carrington. (*Id.* ¶ 73). The letter included a statement for the reasons Jones believed there was an error regarding his mortgage loan and included sufficient details for Carrington to respond. (*Id.*). Carrington never acknowledged receipt of the QWR and never responded to it. (*Id.* ¶ 74).

As of the time Jones filed his amended complaint, he continued to reside in the property. (*Id.* ¶ 5). It is unclear from the amended complaint whether a foreclosure sale was ever scheduled.

## IV. DISCUSSION

In his amended complaint, Jones states eleven counts - four federal violations, six state law violations, and a count for declaratory judgment. (Doc. 18 at 8-26). The court first addresses the federal claims and then moves on to the state law claims.

---

[3] A QWR is written correspondence to the servicer that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B).

**A. The Federal Claims**

In his amended complaint, Jones alleges that Carrington violated four federal statutes: the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.* (Count Seven); the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq.* (Count Eight); the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.* (Count Nine); and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* (Count Ten). (*Id*. at 14-25). He also alleges that Bank of America violated TILA and the FCRA. (*Id*. at 14-16, 18-20 (Counts Seven & Nine)). Bank of America and Carrington have moved to dismiss all federal claims alleged in the amended complaint. (Doc. 29).

**1. TILA**

TILA is a remedial consumer protection statute designed to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a); *see Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). TILA requires creditors to provide consumers with "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Id*. at 412. TILA provides a private right of action against "any creditor" who violates the

requirements of the statute's credit transactions section and allows for actual damages as a result of the failure and, with certain limitations, statutory damages. 15 U.S.C. § 1640(a).

In Count Seven of the amended complaint, Jones alleges that Bank of America and Carrington violated both TILA and Regulation Z.[4] (Doc. 18 ¶¶ 62-71). Specifically, he alleges Defendants failed to provide required disclosures "prior to consummation" of the loan transaction, failed to make required disclosures "clearly and conspicuously in writing," and failed to "include in the finance charge certain charges imposed . . . [and] payable by plaintiff incident to the extension of credit . . . , thus improperly disclosing the finance charge." (*Id*. ¶ 66). He also alleges Defendants made unauthorized charges in the form of attorney fees and other fees not permitted by the mortgage contract, as well as "improperly amortizing the loan." (*Id*. ¶¶ 68, 70). Finally, he alleges Defendants failed to send monthly statements. (*Id*. ¶ 70).

As stated above, by its plain language, TILA's private right of action applies only to actions against "creditors." 15 U.S.C. § 1604(a). A "creditor" is defined as:

> a person who both (1) regularly extends, whether in connection with
> loans, sales of property or services, or otherwise, consumer credit

---

[4] Regulation Z, 12 C.F.R. §§ 226.1 et seq., consists of various rules promulgated by the Federal Reserve Board to further the purposes of TILA. *Hendley v. Cameron-Brown Co*., 840 F.2d 831, 833 (11th Cir. 2000).

which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence. . . .

15 U.S.C. § 1602(g). The civil liability provision of TILA does not apply generally to every person the statute regulates, but only to originating creditors. *Gregory v. Select Portfolio Servicing, Inc.,* 2016 WL 4540891, at *14 (N.D. Ala. Aug. 31, 2016).

Jones's factual allegations demonstrate that neither Defendant is, in fact, the person to whom the debt arising from the loan transaction was initially payable. According to the amended complaint, Jones financed the purchase of the home with United Wholesale Mortgage. (Doc. 18 ¶ 5). As such, neither Bank of America or Carrington are a "creditor" within the meaning of TILA because neither is the party to whom the loan was initially payable. Jones's TILA claim against Bank of America and Carrington is due to be dismissed.

## 2. RESPA

In Count Eight, Jones alleges that Carrington violated RESPA by "failing to acknowledge or properly respond to [his] Qualified Written Request (QWR)." (Doc. 18 ¶ 72). RESPA establishes the procedures a loan servicer must follow, and certain actions it must take, upon receiving a QWR from a borrower. 12 U.S.C. § 2605(e). Section 2605(e) of the RESPA requires a loan servicer to send a written acknowledgement of the borrower's QWR within five days and a written response

to the QWR within thirty days.  12 U.S.C. § 2605 (e)(1)(A), (e)(2).  Failure to adequately respond to a QWR results in liability "to the borrower for each such failure in . . . an amount equal to the sum of any actual damages to the borrower as a result of the failure. . . ."  12 U.S.C. § 2605(f)(1)(A).  To succeed on a claim under § 2605(e), Plaintiff "must show: (1) that Defendant is a servicer; (2) that Defendant received a QWR from the borrower; (3) that the QWR related to the servicing of the loan; (4) that Defendant failed to respond adequately; and (5) that Plaintiff[ is] entitled to actual or statutory damages."  *Buckentin v. SunTrust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1292 (N.D. Ala. 2013).

Carrington argues that Jones's RESPA claim should be dismissed because he has not pleaded sufficient facts to establish that his QWR met the requirements of § 2605(e)(1)(B).  (Doc. 29 at 15-17).  Although it is an extremely close question, the court is satisfied that Jones adequately pleaded his RESPA claim and that the claim should not be dismissed at this time.[5]  Jones alleges that he sent QWRs to Carrington on January 16, 2018; that Carrington never responded to the QWR; and that he was damaged by Carrington's failure to provide him with the requested information about his loan because, without the requested information, he was unable to cure any alleged default or stop the foreclosure proceedings on

---

[5] The court notes Jones's opposition to the motion to dismiss completely misses the mark and does not address the arguments made by Carrington.  (Doc. 34 at 30-32).  Plaintiff devotes his entire argument to explaining why Bank of America should be held vicariously liable, but the amended complaint does not assert a RESPA claim against Bank of America.

his own and had to retain and pay an attorney to stop the foreclosure. (Doc. 18 ¶¶ 73-75). The court is satisfied that these allegations are minimally sufficient to state a claim for violation of RESPA, that the claim is at least plausible on its face and ostensibly demonstrate "a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. Accordingly, Carrington's motion to dismiss Jones's RESPA claim is due to be denied.

That being said, the court acknowledges Carrington's argument and other decisions of district courts within the Eleventh Circuit regarding Jones's failure to attach the purported QWRs to his amended complaint and failure to explain the alleged errors referenced in the letter or how they related to the servicing of his mortgage. (Doc. 29 at 15-16). While the court will not require Jones to supplement his amended complaint with the alleged QWR, the court encourages Carrington to file a motion for summary judgment as soon as practicable if it determines in discovery that the QWR is deficient as a matter of law.

### 3. FCRA

In Count Nine, Jones seeks to hold Bank of America and Carrington liable under the FCRA for allegedly reporting inaccurate information regarding his loan to the national credit bureaus and failing to properly investigate his disputes. (Doc. 18 ¶¶ 76-86). "[T]he FCRA places distinct obligations on three types of entities: consumer reporting agencies, users of consumer reports, and furnishers of

information to consumer reporting agencies." *Chipka v. Bank of Am.*, 355 F. App'x 380, 382 (11th Cir. 2009). It is apparent from Jones's allegations that he is seeking to hold Bank of America and Carrington liable as "furnishers" of information, and in his opposition to Defendants' motion to dismiss she confirms as much. (Doc. 34 at 32-34).

"The FCRA imposes two separate duties on furnishers. First, [15 U.S.C.] § 1681s-2(a) requires furnishers to submit accurate information to [credit reporting agencies]. Second, § 1681s-2(b) requires furnishers to investigate and respond promptly to notices of [consumer] disputes." *Green v. RBS Nat'l Bank*, 288 F. App'x 641, 642 (11th Cir. 2008). The FCRA provides a private right of action for violations of § 1681s-2(b), and only when "the furnisher received notice of the consumer's dispute from a consumer reporting agency." *Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009).

The amended complaint alleges that "[i]n January 2017, February 2017, and November 2017[,] each of the three credit reporting agencies notified the Defendants of the pending dispute and sought investigation and inquiry related to the Plaintiff[']s dispute related to the information on their [sic] credit report concerning their [sic] mortgage loan account."[6] (Doc. 18 ¶ 77). Bank of America

---

[6] The court notes that it appears that much of this language was copied and pasted from another document, like many other sentences that appear in the amended complaint, which refer to plural

and Carrington point out a number of problems with these allegations, including the use of the generic "Defendants" and the inconsistencies with the dates and when Carrington began servicing the loan. (Doc. 29 at 19). Additionally, Defendants note that Plaintiff's original complaint did not contain any factual allegations that Defendants received notice of a dispute regarding Plaintiff's loan from a consumer reporting agency, but these specific allegations were added only after that deficiency was highlighted by Defendants in their original motion to dismiss. (*Id*. at 18). While the court acknowledges these issues with the allegations, at this stage in the litigation, the court concludes that the allegations of the amended complaint are minimally sufficient to state a cause of action against both Defendants for a violation of the FCRA. The allegations are more than a mere recitation of the elements and ostensibly demonstrate "a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. As such, the motion for judgment on the pleadings is due to be denied as to this claim.

### 4. FDCPA

Jones's final federal claim against Carrington is for violations of the FDCPA.[7] Jones alleges that Carrington committed numerous FDCPA violations,

---

Plaintiffs, cite to different banking institutions, and reference incorrect dates. (*See, e.g*., doc. 18 ¶¶ 6, 68, 77, 90).

[7] Plaintiff's opposition to the motion for judgment on the pleadings seems to indicate that the claim is asserted against both Defendants. (Doc. 34 at 34-37). The court will not allow Plaintiff to assert this claim against Bank of America. *See Gilmour v. Gates, McDonald & Co*., 382 F.3d

including, but not limited to: attempting to collect amounts not owed under his mortgage contract; seeking unjustified amounts; threatening legal action that was not permitted or not actually contemplated; revealing or discussing the nature of the debt with third parties; failing to identify itself as a debt collector in its communications; and falsely stating the amount of the debt. (Doc. 18 ¶ 90). Carrington argues that Jones's conclusory, vague and inconsistent allegations are insufficient to plead an FDCPA claim.[8] (Doc. 29 at 21-24). While the court agrees with Carrington in some respects, the court ultimately concludes Jones has done enough to state a claim under the FDCPA.

The amended complaint alleges that Carrington violated nearly a dozen sections of the FDCPA. Most of these allegations, however, simply provide a recitation of the FDCPA with no factual basis to support the claim. Paragraphs 90 and 93 of the amended complaint are perfect examples of such improper pleading. In those paragraphs, Jones alleges that Carrington violated at least six sections of the FDCPA (15 U.S.C. §§ 1692c, 1692e(2)(A), 1692e(8), 1692e(11), 1692f(1), and 1692g(b)), but the allegations are really only rote recitations of elements of the

---

1312, 1315 (11th Cir. 2004) (a plaintiff may not raise a new claim in response to a motion for summary judgment).

[8] Instead of responding to this argument, Plaintiff's opposition brief discusses why Defendants are debt collectors under the FDCPA. (Doc. 34 at 34-37). The motion for judgment on the pleadings, however, does not address this issue or make any argument regarding whether or not Carrington is a debt collector. (Doc. 29 at 19-22).

alleged violations without any specific factual allegations relating to those elements. For instance, Jones alleges "Carrington falsely represented the character, amount, or legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A)." (Doc. 18 ¶ 93). The allegation does not specify which of the three actions Carrington allegedly did and certainly does not "raise a right to relief above the speculative level." *Iqbal*, 556 U.S. at 555. As explained above, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*., 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted). As such, the allegations contained in these paragraphs do not state a claim for a violation of the FDCPA.

Notwithstanding the above, and while not the model of draftsmanship, paragraphs 98 through 100 provide a sufficient basis to state a claim under the FDCPA. The allegations contained therein given enough detail to alert Carrington as to the claims alleged by Jones. And while the court agrees with Carrington that some of the allegations are internally inconsistent, (doc. 29 at 22), the other factual allegations are minimally enough to withstand a motion for judgment on the pleadings. The motion, therefore, is due to be denied regarding the alleged FDCPA violations.

## B.  The State Law Claims

In her amended complaint, Jones also asserts state law tort claims based on negligence (Count One), wantonness (Count Two), false light (Count Five), and defamation/libel/slander (Count Six), along with claims for unjust enrichment (Count Three) and breach of contract (Count Four).  All the claims are brought against Defendants Bank of America and Carrington.  Defendants have moved for judgment on the pleadings as to all the state law claims.  (Doc. 29).

### 1.  Negligence and Wantonness

In Counts One and Two of the amended complaint, Jones alleges Bank of America and Carrington engaged in negligent and wanton conduct regarding the servicing of the loan, attempted to collect funds not owed, caused his property insurance to be cancelled, negligently defaulted Jones, and attempted to complete a foreclosure sale.  (Doc. 18 ¶¶ 26, 29).  Additionally, Jones claims Bank of America and Carrington negligently and wantonly failed to prevent the dissemination of inaccurate and libelous information to others, including the credit bureaus and "credit grantors".  (*Id*.).  Finally, Jones contends Bank of America and Carrington negligently and wantonly trained and supervised the employees responsible for her mortgage account.  (*Id*.).  Defendants contend these claims fail as a matter of law because Alabama law does not recognize a cause of action for negligent or wanton servicing of a mortgage account.  (Doc. 29 at 5-6).  The court agrees.

"To establish negligence, [a] plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994) (quoting *Albert v. Hsu*, 602 So. 2d 895, 897 (Ala. 1992)). "To establish wantonness, [a] plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains." *Id*. Put another way, wantonness is not just a higher level of negligence, but involves "the conscious doing of some act or the omission of some duty while knowing of the existing conditions *and* being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (emphasis in original).

Jones's claims for negligence and wantonness fail as a matter of law because "Alabama law does not recognize a tort-like cause of action for the breach of a duty created by contract." *Blake v. Bank of America, N.A.,* 845 F. Supp. 2d 1206, 1210-11 (M.D. Ala. 2012) (citations omitted). Any obligations Defendants owed to Jones arose from the legal relationship created by the loan documents. These obligations do not give rise to a duty of reasonable care generally owed to members of the public. *James v. Nationstar Mortg., LLC*, 92 F. Supp. 3d 1190, 1200 (S.D. Ala. 2015). Because the duty Jones contends Defendants breached is

based on contractual agreements, his negligence and wantonness claims are not cognizable under Alabama law. *See U.S. Bank Nat'l Ass'n v. Shepherd*, 202 So. 3d 302, 314-15 (Ala. 2015) (holding that wantonness claims for servicing and handling mortgages are improper because the underlying duties are established by contract); *see also James*, 92 F. Supp. 3d at 1198 (recognizing "a veritable avalanche of recent (and apparently unanimous) federal precedent has found that no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law").

Although not mentioned by Defendants in their motion, Jones's negligence and wantonness claims also include allegations that Defendants failed to properly train and/or supervise its employees with regard to the handling of her loan account. (Doc. 18 ¶¶ 26, 29). Regardless of this omission, and even assuming that Jones might otherwise be able to assert a claim for negligent or wanton training or supervision, he has not done so. In a claim for negligent or wanton training/supervision, "the master is held responsible for his servant's incompetency when notice or knowledge, either actual or presumed, of such unfitness has been brought to him." *Thompson v. Havard*, 235 So. 2d 853, 858 (Ala. 1970). Jones has not pleaded any acts regarding how Bank of America or Carrington employees handled his loan, what training and supervision they received, or what notice either Defendant had of their alleged incompetency. He has offered no facts from which

the court could even infer that he has a plausible claim against either Defendant for failure to properly train and/or supervise their employees. Accordingly, Plaintiff's negligence and wantonness claims is due to be dismissed.[9]

## 2. Unjust Enrichment

Count Three of the amended complaint alleges Bank of America and Carrington were unjustly enriched by the payment of fees, insurance proceeds, and equity in Jones's home. (Doc. 18 ¶ 34). Defendants argue that this claim "cannot stand because there is an express written contract that governs the rights and obligations between the parties." (Doc. 29 at 6). Instead of addressing this argument, Jones recites the elements of an unjust enrichment claim, reasserts his allegations in the amended complaint, and argues that he has alleged sufficient facts to overcome the motion to dismiss. (Doc. 34 at 18-19). The court is unpersuaded by Jones's argument as the law is so far in Defendants' favor.

"The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." *Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1193 (Ala. 2008) (emphasis and internal quotation marks omitted).

---

[9] The court rejects Plaintiff's attempt to rescue his negligence and wantonness claims by arguing that "federal law and regulations impose a duty of affirmative care on the servicing Defendants, Bank of America and Carrington." (Doc. 34 at 14). Similar arguments have been soundly rejected. *James v. Nationstar Mortg*., LLC, 92 F. Supp. 3d 1190, 1200 n.9 (S.D. Ala. 2015); *Bush*, 2016 WL 324993 at * 9.

However, "the existence of an express contract extinguishe[s] an unjust enrichment claim altogether because unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law." *Univalor Trust, SA v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 382 (S.D. Ala. 2016). Here, the amended complaint clearly alleges a written contract between the parties. (Doc. 18 ¶ 5). Because of the existence of a contract, Jones's claim for unjust enrichment fails as a matter of law. *See Prickett v. BAC Home Loan,* 946 F. Supp. 2d 1236, 1248 (N.D. Ala. 2013); *Bias v. Cenlar Agency, Inc*., 2018 WL 2365428, at *4 (N.D. Ala. 2018); *Rice v. JPMorgan Chase Bank NA*, 2014 WL 3889472, at *11 (N.D. Ala. Aug. 5, 2014).

Additionally, Jones has failed to specifically allege how Bank of America or Carrington were enriched. Under Alabama law, "for a plaintiff to prevail on a claim of unjust enrichment, the plaintiff must show that the defendant holds money which, in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." *Federal Home Loan Mortg. Corp. v. Anchrum,* 2015 WL 2452775, at *5 (N.D. Ala. 2015). There are a number of issues with the amended complaint. First, he contends that "Bank of America refused to take payments. . . ." (Doc. 18 ¶ 15). Second, he has not pled what fees he improperly was required to pay. Third, with regard to maintenance of insurance, he has failed to allege that Defendants' retention of

insurance proceeds were not used to maintain insurance. Therefore, this claim fails as a matter of law for this alternative reason.

### 3. Breach of Contract

Count Four of the amended complaint alleges a breach of contract claim against both Bank of America and Carrington. (Doc. 18 ¶¶ 38-44). "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (internal quotations and citations omitted). Bank of America and Carrington only challenge the first element – whether there was a contract binding the parties. (Doc. 29 at 8-9; Doc. 37 at 6-7). Nowhere in the amended complaint does Plaintiff allege that either Bank of America or Carrington were a party to the contract. Instead, Plaintiff alleges he entered into a contract with his Lender. (Doc. 18 ¶¶ 5, 38, 41). That being said, Jones alleges the loan was later "assigned" to Bank of America and then to Carrington. (*Id*. ¶¶ 7, 8, 16).[10] Although by no means clear as to when or how this assignment occurred, this allegation is minimally sufficient to allege the existence of a contract between

---

[10] While the court acknowledges the amended complaint states that Bank of America and Carrington were servicers of the loan, the amended complaint arguably alleges that at some point in time (whether or not this pans out to be a reality in discovery is beyond the point), the contract was sold to Bank of America. (Doc. 18 ¶ 7) ("Bank of America is purportedly the owner of the loan."). This is minimally enough at this stage in the litigation.

Plaintiff and Bank of America and Carrington, separate and apart from the servicing agreement.[11]

Notwithstanding the above, to the extent Plaintiff's claim for breach of contract is based on allegations that Defendant failed to comply with "HUD rules and regulations," (doc. 18 ¶ 42), this claim fails as a matter of law. Alabama law does not recognize a breach of contract claim based on failure to comply with the regulations promulgated by HUD. *See Adams v. Bank of America, N.A.*, 237 F. Supp. 3d 1189, 1198-99 (N.D. Ala. 2017). Therefore, the motion is due to be granted in part and denied in part with regard to the breach of contract claim. The general breach of contract claim will remain, but the alleged breach of contract regarding failure to comply with HUD is due to be dismissed.

### 4. False Light

In Count Five of the amended complaint, Jones claims that Bank of America and Carrington made inaccurate reports "on the internet media and to his homeowner insurance carrier." (Doc. 18 ¶ 47). Defendants argue the claim fails because it is not premised on communications "to the public at large" or "to so many persons 'that the matter must be regarded as substantially certain to become

---

[11] The court acknowledges the inconsistencies in Jones's allegations that the alleged assignment was invalid, Jones is certainly permitted to argue in the alternative, should the court rule the assignments valid. The court allows this same leeway with Defendants' inconsistent arguments that on one hand, there is no contract between Plaintiff and the Defendants, but on the other hand that Plaintiff's negligence, wantonness, and unjust enrichment claims fail because of the existence of a contractual relationship between the parties.

one of public knowledge.'"  (Doc. 29 at 11).  Other than putting the words "False Light" in the heading of a section, Plaintiff offers no specific argument in response to Defendants' arguments on this claim.  (Doc. 34 at 26-27).

To establish a claim for false light, a plaintiff must show that the defendant (1) "gave publicity to a matter" concerning the plaintiff, (2) placed the plaintiff in a "false light" that would be highly offensive to a reasonable person, and (3) did so with knowledge that the publicized matter was false or with reckless disregard to its truth or falsity. *Regions Bank v. Plott*, 897 So. 2d 239, 244 (Ala. 2004) (quoting *Butler v. Town of Argo*, 871 So. 2d 1, 12 (Ala. 2003)).  "[G]iving publicity" is "making a 'matter . . . public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.'"  Plott, 897 So. 2d at 245.  Publicity is "more difficult to prove than [mere] publication," and is not satisfied by the "'communicat[ion of] a fact . . . to a single person or even to a small group of persons.'" *Id*. at 245 (emphases omitted) (quoting *Ex parte Birmingham News, Inc*., 778 So. 2d 814, 818 (Ala. 2000)).

The amended complaint does not state any facts from which it could be determined that Defendants "gave publicity" to the statements allegedly made by them referring to Plaintiff to either the "internet media" or his insurance carrier. There are no allegations as to what statements were made, how often they were

made, to whom they were made, or any other details from which it could be inferred that such statements were either "highly offensive" or have become public knowledge due to the actions of Defendants. The court joins the other district courts in this circuit that have dismissed similar claims with similar allegations. *See Rice v. Seterus, Inc.,* 2018 WL 513345, at * 7-8 (N.D. Ala. Jan., 23, 2018) (dismissal of false light claim premised on statements made to "the national media" and plaintiff's homeowner's insurance carrier, in an action filed by Plaintiff's counsel); *Jackson v. Bank of Mellon*, 2016 WL 4942085, at *10 (S.D. Ala. July 19, 2016) (recommending, in an action filed by Plaintiff's counsel, the dismissal of a similar false light claim premised on statements made to the "credit reporting media" and an insurance carrier for failure to plead the publicity element), *adopted*, 2016 WL 4942012 (S.D. Ala. Sept. 15, 2016). Accordingly, Plaintiff's claim for false light is due to be dismissed.

### 5. Defamation, Slander, and Libel

In Count Six of the amended complaint, Jones alleges that Defendants published and communicated false and defamatory statements that he was in default. (Doc. 18 ¶¶ 50-61). Specifically, Jones alleges that the foreclosure sale notices in the Shelby County newspaper were defamatory and that Defendants either knew they were false or recklessly disregarded their potential falsity. (*Id*. ¶¶

50, 52, 58). Jones pleads reputational damages from Defendants' publication. (*Id.* ¶¶ 51, 58).

There are two types of defamation: libel, which involves the use of print media to publish a defamatory comment; and slander, which involves the oral expression of a defamatory comment. *Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 390 (Ala. Civ. App. 1999). Because Plaintiff's claim is based on written communications, the foreclosure sale notices, his claim is in reality one for libel, not slander.[12] To prove a communication was defamatory, a plaintiff must present evidence establishing the following elements: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication of that statement to a third party; (3) fault amounting to at least negligence on the part of the defendant; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement. *McCaig v. Talladega Pub. Co., Inc.*, 544 So. 2d 875, 877 (Ala. 1989) (citing Restatement (2d) of Torts § 558 (1977)). As opposed to slanderous statements, libelous statements are actionable *per se*, without a showing of special damages, "if they directly tend to prejudice anyone in his office, profession, trade, or business, or in any lawful employment by which he may gain his livelihood." *Kelly v. Arrington*, 624 So. 2d

---

[12] Although paragraph 56 of the amended complaint states the communications were oral and/or written, the specific allegations relating to this claim only refer to written communications. (*See* Doc. 18 ¶¶ 50, 52, 58).

546, 549 (Ala. 1993).  As a general matter, statements "charging nonpayment of debts or insolvency are actionable without special damage being shown[ ] when they refer to merchants, tradesmen, or others in occupations where credit is essential."  *Harrison v. Burger*, 103 So. 842, 843-44 (Ala. 1925) (holding that publications accusing the plaintiff of failing to pay a debt were not libel *per se* because the plaintiff did not claim to engage in an occupation where credit was essential); c*f. Gen. Elec. Credit Corp. v. Alford & Assocs., Inc*., 374 So. 2d 1316, 1319-20 (Ala. 1979) (concluding that publications to mobile home suppliers about a plaintiff's failures to meet financial obligations were libelous).

Defendants contend Jones's claim fails because he has not pleaded any different, special harm caused by the publication of the statements.  (Doc. 29 at 12-13).  The court agrees.  "Special damages are the material harms that are the intended result or natural consequence of the [defamatory] statement . . . , and the general rule is that they are limited to 'material loss capable of being measured in money,' Restatement (2d) of Torts § 575, cmt. b, at 198."  *Butler v. Town of Argo*, 871 So. 2d 1, 18 (Ala. 2003) (internal citation omitted) (quoting *Shook v. St. Bede Sch*., 74 F. Supp. 2d 1172, 1180 (M.D. Ala. 1999)).  Plaintiff alleges that Defendants published and communicated false and defamatory statements regarding Plaintiff and that such communications "harmed the reputation of the Jones and/or deterred third persons from associating with Jones."  (Doc. 18 ¶ 51).

With regard to damages, Plaintiff additionally states that he "was caused to suffer injury to his reputation in the eyes of the community and the public and was subject to ridicule," "was caused to be injured and damaged," and that the allegedly defamatory statements "harmed Jones's reputation and character" which caused him to suffer "damages of his reputation which negatively affected his credit and his business[13] causing monetary losses." (*Id.* ¶¶ 55, 57, 58). Plaintiff did not set forth any facts that the allegedly defamatory statements were actionable irrespective of special harm or present facts showing he suffered special harm, even after Defendants moved to dismiss this claim on those grounds. As a result, Jones's defamation claim is due to be dismissed.

## C. Leave to Amend

Throughout her response in opposition to Defendants' motion to dismiss, Jones requests leave to amend his already amended complaint to correct any deficiencies in all his claims, except her claims for defamation, libel, slander and false light and her RESPA claim. (Doc. 34 at 18-19, 26, 30, 34, 37). The court declines to allow leave to amend. Jones was placed on notice of the deficiencies to his complaint with Defendants' first motion to dismiss. (Doc. 4). He has had one opportunity to correct the deficiencies and has failed to do so. In view of the opportunity already afforded to Jones to amend his complaint, the allegations

---

[13] Nowhere else in the amended complaint does Plaintiff allege that he owns a business and does not explain how his business was damaged by any alleged false and defamatory statements.

contained in the amended complaint, and the foregoing legal determinations by the court, there is no reason to believe Jones will be able to correct the deficiencies if he is given a second bite at the apple.

## V.   CONCLUSION

Based on the foregoing, Defendants' motion to dismiss is due to be granted in part and denied in part as follows: Jones's negligence, wantonness, unjust enrichment, false light, defamation/libel/slander, and TILA, claims are due to be dismissed; and Jones's breach of contract and FCRA claims against both Defendants and RESPA and FDCPA claims against Carrington will remain. Additionally, Jones's count for declaratory relief will remain. To the extent Jones requests permission to file a second amended complaint, the request is due to be denied. An order consistent with this memorandum opinion will be entered.

**DATED** this 1st day of July, 2019.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge