# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| TYRONE JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:18-cv-0512-JEO |
| | ) | |
| BANK OF AMERICA, N.A., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

In this action, Plaintiff Tyrone Jones has alleged a variety of federal and state law claims against Defendants Bank of America, N.A. ("Bank of America") and Carrington Mortgage Services, LLC ("Carrington"). (Doc. 18).[1] The claims are based on allegations that Defendants falsely reported Jones was in default on a mortgage loan and wrongfully initiated foreclosure proceedings on his property, among other things. (*Id.*). Presently before the court[2] is Defendants' motion for

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files ("CM/ECF") system. Unless otherwise noted, page citations to briefs, evidence, and other papers in the court file are to the page number of the electronically filed document, which may not coincide with pagination on the original "hard copy." However, pinpoint citations to all depositions are to the page of the deposition transcript.

[2] The action was originally assigned to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and the court's general order of reference dated January 2, 2015. The parties have since consented to an exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (Doc. 14).

summary judgment. (Doc. 49). For the reasons that follow, the court concludes the motion is due to be granted in full.

## I.    PROCEDURAL HISTORY

Jones filed this action in the Circuit Court of Shelby County, Alabama, asserting fourteen separate claims against Defendants: negligence, wantonness, unjust enrichment, wrongful foreclosure, slander of title, breach of contract, fraud, false light, defamation/libel/slander, violation of the Truth in Lending Act ("TILA"), violation of the Real Estate Settlement Procedures Act ("RESPA"), violation of the Fair Credit Reporting Act ("FCRA"), violation of the Fair Debt Collection Practices Act ("FDCPA"), and a claim for declaratory relief. (Doc. 1-1 at 2-29). Defendants removed the action to this court and then moved to dismiss all of the claims contained in the complaint, or, to the extent any claims remained, moved for a more definite statement of those claims. (Docs. 1, 4).

In response to the motion to dismiss, Jones filed a motion for leave to file an amended complaint, noting the different pleading standards in federal and state court. (Docs. 8, 9). The court granted Jones's motion to file an amended complaint, (doc. 10), and after two extensions, (docs. 11 & 16), Jones filed his amended complaint on May 21, 2018.[3] (Doc. 18). The amended complaint contains a more

---

[3] In light of the filing of the amended complaint, Defendants' original motion to dismiss was deemed moot. (Doc. 26).

detailed set of factual allegations and deleted three claims (wrongful foreclosure, slander of title and fraud), but otherwise the differences between the two complaints are minimal.  (Compare Doc. 1-1 at 2-29 with Doc. 18).

On July 9, 2018, Defendants filed an answer to the amended complaint.  (Doc. 24).  Defendants then filed a motion for judgment on the pleadings, reasserting most, if not all, of the same arguments presented in their original motion to dismiss.  (Doc. 29).  The court granted in part and denied in part the motion for judgment on the pleadings.  (Docs. 40 & 41).  Specifically, the court dismissed Jones's claims for negligence, wantonness, unjust enrichment, false light, defamation/libel/slander, and violations of TILA.  (*Id*.).  The court denied the motion as to Jones' breach of contract and FCRA claims against both Defendants and his RESPA and FDCPA claims against Carrington.  (*Id*.).  Additionally, Jones' claim for declaratory relief remained.  (*Id*.).

Defendants filed the instant motion for summary judgment on December 9, 2019, along with a brief and evidence in support of the motion.  (Docs. 49, 50).  After multiple extensions, (*see* docs. 52, 54, 56, 60), Plaintiff filed a response and evidence in opposition to the motion, (doc. 58), and Defendants filed a reply, (doc. 61).  The motion has been fully briefed and is now ripe for decision.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id*. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *See id.* at 324.

The substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the

evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *See id.* at 249.

## III.  STATEMENT OF FACTS

On June 10, 2009, Jones[4] executed and delivered a Note to the original lender, United Wholesale Mortgage, in the original principal amount of $165,445.00.  (Doc. 50-2; *see also* Doc. 50-1 ("Jones Dep.") at 15-17).  The Note was secured by a real estate mortgage, executed by Jones and his wife, encumbering the real property located at 128 Dallas Lane, Montevallo, Alabama 35115.  (Doc. 50-3).  Bank of American began servicing the loan on August 1, 2009.  (Doc. 50-4; Jones Dep. at 18-19).

Over the life of the loan, Jones has had difficulty making the monthly payments and his payments have been sporadic, at best.  (*See generally* Doc. 50-6).  In the beginning, Jones made regular payments in August, September, October, and December 2009, as well as January, February, March, May and July 2010.  (*Id*. at 3-4; Jones Dep. at 23-24).  At that point, Jones began having additional difficulties making his monthly payments.  (*See* Doc. 50-6 at 3-6; Jones Dep. at 24-25).

On July 6, 2010, Bank of America sent Jones a notice of intent to accelerate, stating that he owed $3,602.96 at that time.  (Jones Dep. at 25-26).  Jones, however,

---

[4] Both parties state that Jones' wife executed the Note as well.  (Doc. 49 at 2; Doc. 58 at 2).  The Note, however, is only signed by Mr. Jones.

did not make a payment on the loan. Instead, he contacted Bank of America in November 2010 and asked for a loan modification. (*Id.* at 26-27). Bank of America sent a letter requesting information from Jones, but there is no evidence that Bank of America ever received anything from Jones regarding this loan modification request. (*Id.* at 27-30). Jones did not make any further regular payments on the loan for the remainder of 2010 and did not make any regular payments in 2011. (Doc. 50-6 at 4-5).

Then, in February 2012, Jones was approved for a trial plan for a loan modification. (Jones Dep. at 34; Doc. 50-7). The trial plan allowed for Jones to make payments of $1,132.73 for three months, beginning in March 2012. (Jones Dep. at 34-35). Jones made all three payments pursuant to the trial plan. (*Id.* at 36-38; Doc. 50-6 at 6). He did not make any further payments, however, (*id.* at 37-38), and there is no evidence that the trial plan was converted into a loan modification.

In October 2012, Jones again contacted Bank of America regarding a loan modification. (*Id.* at 38-39). The parties eventually came to an agreement and a loan modification agreement was entered on March 21, 2013. (*Id.* at 40-42; Doc. 20-8). The loan modification brought Jones' loan current as of March 2013. (Jones Dep. at 44). After receiving the loan modification, Jones made a payment in March 2013, but then did not make any further payments in 2013. (Jones Dep. at 44). As a result, in June 2013, Bank of America sent Jones a notice of intent to accelerate,

stating that he owed $2,423.90.  (*Id* at 46).   And the next month Bank of America sent Jones a letter stating they were going to send his loan to foreclosure.  (*Id*. at 47-48).

Shortly thereafter, on August 12, 2013, Jones and his wife applied for another loan modification.  (*Id*. at 48).   Bank of America sent Jones a notice dated September 17, 2013, stating that the loan modification was approved but that Jones needed to send in some paperwork.  (*Id*. at 53).   Jones testified he recalled sending in more paperwork, but there is no evidence Bank of America ever received anything from Jones regarding this loan modification attempt.  (*Id*.).   Instead, on October 24, 2013, Bank of America sent Jones a notice informing him that he was not eligible for a loan medication because either he indicated he did not accept the offer, or he withdrew the request.  (*Id*. at 53-54).  Jones could not recall what happened with this loan modification.  (*Id*. at 54-55).

Then in February 2014, Jones was approved for a loan modification for a partial claim under FHA Home Affordable Modification Program.  (*Id*. at 55-56). Jones, however, did not accept this modification because it did not lower his monthly payment.  (*Id*. at 56-59).  At the end of 2014, Jones attempted to sell the property through a short sale.  (*Id*. at 60-61).  Jones changed his mind and decided not to sell the property, however, because the buyer only wanted to pay $130,000.00, and Jones believed the property was worth more than that amount of money.  (*Id*. at 63-66).

There is no record of any regular mortgage payments by Jones in 2014. (Doc. 50-6 at 8-9).

In March 2015, Jones again attempted to get a loan modification. (Jones Dep. at 66). Bank of America informed Jones that "they couldn't do the modification until [he] took [his] wife off the deed" because she had filed for bankruptcy in 2015. (*Id*. at 72-73). Jones' wife executed a quitclaim deed in favor of her husband in order to continue with the loan modification. (*Id*. at 73-74). On March 23, 2016, Bank of America filed a motion in the bankruptcy court asking the court to ratify the quitclaim deed and show that Jones' wife no longer had any interest in the property. (*Id*. at 75). The motion was granted on April 26, 2016. (*Id*. at 76; Doc. 58-2).

Jones contends that after this point, Bank of America never went through with the loan modification he applied for in March 2015.[5] (Jones Dep. at 78-79). Jones testified that someone at Bank of America told him that his interest rate would drop with the modification and his payment would be reduced. (*Id*. at 81, 105-07). Jones never received anything in writing from Bank of America regarding these conversations, and a modification was never granted. (*Id*. at 81, 106-07). Jones testified that he and Bank of America "never came to an agreement" on this modification. (*Id*. at 82).

_____

[5] The deposition testimony is a bit unclear as to whether Jones was referring to the modification he applied for in March 2015 or whether he applied for another modification.

During the pendency of his wife's bankruptcy proceedings, Jones received a partial mortgage from HUD in the amount of $31,998.46 on July 22, 2015. (*Id*. at 69; Doc. 50-9). On May 23, 2016, Bank of America applied the HUD mortgage to Jones' account. (*Id*. at 78; Doc. 20-6 at 13).

Carrington began servicing the loan on July 11, 2017. (Doc. 18 ¶ 16; Jones Dep. at 85-87). Shortly thereafter, Jones sought a loan modification from Carrington, but it never occurred.[6] (Jones Doc. at 89). On August 30, 2017, Carrington provided a notice of default to Plaintiff. (Doc. 20-11; *see also* Jones Dep. at 89-90). The notice states that Jones was in default for 20 payments and that he owed $26,881.20, including late charges. (*Id*.). Jones admitted that the amount owed was correct and he could not have paid it. (Jones Dep. at 90-91). The following month, on September 30, 2017, Carrington sent Jones a notice of intent to foreclose. (Doc. 20-12; Jones Dep. at 91). It is undisputed that Jones never made a payment to Carrington. (Jones Dep. at 21, 85-86).

On January 18, 2018, Jones, through his attorney, sent a letter to Carrington disputing the debt. (*Id*. at 92-97; *see* Doc. 20-13). Carrington treated the letter as a

---

[6] Jones testified that he was in the process of applying for a loan modification with Bank of America when Carrington began servicing his loan. (Jones Dep. at 88). He asked Carrington if Bank of America sent that information to them when his loan moved to Carrington, but he was told there was no record of a modification. (*Id*.).

request for verification of a debt under the FCDPA and responded on March 2, 2018, which was received by counsel for Jones. (*Id*.).

At the time of his deposition, Jones and his wife continued to reside at the property. (Jones Dep. at 9). It is undisputed Jones has not made a regular payment on the loan since 2016. (*Id*. at 86; see also Doc. 20-6).

## IV. DISCUSSION

As discussed above, five claims remain in Jones's amended complaint – three federal claims, one state law claim and a claim for declaratory judgment. (*See* Docs. 40 & 41). The court first addresses the federal claims and then moves on to the state law claim and claim for declaratory judgment.

### A. The Federal Claims

The three remaining federal claims allege violations of the following statutes: the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601 *et seq*. (Count Eight); the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681; and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. (Count Ten). The RESPA and FDCPA claims are alleged against Carrington only and the FCRA claim is alleged against both Bank of America and Carrington. For the reasons that follow, both Defendants are entitled to summary judgment on these claims.

### 1. RESPA

In Count Eight, Jones alleges that Carrington violated RESPA by "failing to acknowledge or properly respond to [his] Qualified Written Request (QWR)." (Doc. 18 ¶ 72). Jones further alleges that he was damaged because he was "unable to get a proper accounting of the fees and charges owed on the account to cure any alleged default. . . ." (*Id*. ¶ 75).

RESPA establishes the procedures a loan servicer must follow, and certain actions it must take, upon receiving a QWR from a borrower. 12 U.S.C. § 2605(e). Section 2605(e) of the RESPA requires a loan servicer to send a written acknowledgement of the borrower's QWR within five days and a written response to the QWR within thirty days. 12 U.S.C. § 2605 (e)(1)(A), (e)(2). Failure to adequately respond to a QWR results in liability "to the borrower for each such failure in . . . an amount equal to the sum of any actual damages to the borrower as a result of the failure. . . ." 12 U.S.C. § 2605(f)(1)(A). To succeed on a claim under § 2605(e), Plaintiff "must show: (1) that Defendant is a servicer; (2) that Defendant received a QWR from the borrower; (3) that the QWR related to the servicing of the loan; (4) that Defendant failed to respond adequately; and (5) that Plaintiff[ is] entitled to actual or statutory damages." *Buckentin v. SunTrust Mortg. Corp*., 928 F. Supp. 2d 1273, 1292 (N.D. Ala. 2013).

Carrington contends that Jones' claim fails because the undisputed facts show that Carrington timely responded to Jones' inquiry. (Doc. 49 at 12). Additionally, Carrington argues that Plaintiff has failed to demonstrate how he was damaged. (*Id.* at 12-13). In response, Jones states, without any citation to the record, that he did not receive a proper response from Carrington from his QWR and that he "offered proof that they [sic] suffered damages via the attempted foreclosure conducted by Carrington." (Doc. 58 at 28).

Jones' argument is not supported by the record. First, there is no evidence that Carrington did not properly respond to Jones' QWR. In fact, the evidence shows exactly the opposite – on March 2, 2018, Carrington responded to the letter sent by Jones through his counsel and the response was received by counsel for Jones. (Doc. 20-13; Jones Dep. at 96-97). Second, there is no evidence to support Jones' contention that he suffered damages as a result of the alleged RESPA violation. Plaintiff's alleged damage, that the lack of response caused him to be unable to cure the default, is totally unsupported by the record, as Jones testified that since 2016 he has been unable to make any payment to reinstate the loan. (Jones Dep. at 90-91). Additionally, there is no evidence to support Plaintiff's contention that he suffered damages from any attempted foreclosure. Statements by counsel in a brief, without support from the record, are not evidence. *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328,

1337 (5th Cir. 1980).[7]  As such, summary judgment in favor of Carrington is proper as to this claim.

## 2. FCRA

In Count Nine, Jones seeks to hold Bank of America and Carrington liable under the FCRA for allegedly reporting inaccurate information regarding his loan to the national credit bureaus and failing to properly investigate his disputes.  (Doc. 18 ¶¶ 76-86).  Defendants clearly moved for summary judgment on this claim, arguing that "[b]ecause Plaintiff never made a dispute to a credit reporting agency, no duty under . . . the FCRA was ever triggered for Defendants."  (Doc. 49 at 11).  Plaintiff's brief in opposition, however, does not address his FCRA claims against Bank of America and/or Carrington.  (*See* Doc. 58).   In fact, in response to Defendants' motion to summary judgment, Plaintiff makes no argument, cites no legal authority, and identified no issues of material fact concerning this claim.  (*Id*.).  Instead, Plaintiff focuses solely his claims for breach of contract, violation of the FDCPA and RESPA, and his claim for declaratory relief. (*Id*. at 9-29).  "[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995).  As such, the court deems Plaintiff's FCRA claims abandoned.  *See McMaster v. United*

---

[7] *See Bonner v. City of Prichard, Ala.,* 661 F.2d 1206, 1209 (11th Cir.1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

*States*, 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment"). Defendants are entitled to summary judgment as a matter of law on Plaintiff's FCRA claim.

### 3. FDCPA

Jones's final federal claim against Carrington is for violations of the FDCPA. The FDCPA seeks to remedy abusive, deceptive, and unfair debt collection practices by debt collectors against consumers, and prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f; *see* 15 U.S.C. § 1692e; *Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011); *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). Under the FDCPA, a debt collector who "fails to comply with any provision . . . with respect to any person is liable to such person" for "actual damage[s]," costs, "a reasonable attorney's fee as determined by the court," and "additional damages." 15 U.S.C. § 1692k(a). "In order to prevail on an FDCPA claim, Plaintiff must establish that: (1) he was the object of collection activity arising from consumer debt; (2) Defendant qualifies as a 'debt collector' under the FDCPA; and (3) Defendant

engaged in an act or omission prohibited by the FDCPA." *Dunham v. Lombardo,*

*Davis & Goldman,* 830 F. Supp. 2d 1305, 1306-07 (S.D. Fla. 2011) (citing *Wise v.*

*Cach*, 2010 WL 1257665, *2 (S.D. Fla. 2010)).

In the order on the motion for judgment on the pleadings, the court concluded

that the vast majority of Jones' FDCPA claim failed to state a claim for relief. (Doc.

40 at 17). The only portion of the claim that survived were paragraphs 98 through

100 of the amended complaint. (*Id*. at 17-18). Those paragraphs alleges as follows:

> 98. Every demand for payment in every notice or statement Carrington
> sent to the Plaintiff attempted to collect an incorrect amount or an
> amount not due. Defendant included the wrong amount due in all its
> collection letters and demands for payment as a result of the
> Defendant's failure to implement the loan modification and failure to
> follow its terms. Likewise, the threatening of foreclosure based on
> inaccurate information regarding the amount due or the improper
> default is a violation of the FDCPA. In other words, each collection
> notice or statement Defendants sent to the borrowers during the period
> of January 2017 until January 2018 contained inaccurate information
> regarding the amounts due, attempted to collect fees or expenses or
> amounts not due.

> 99. The Plaintiff entered into a loan modification agreement in July
> 2015 with Bank of America, the loan servicer at the time, wherein the
> terms of the loan were modified and the loan account was to be brought
> completely current. However, the loan was never modified by Bank of
> America per the agreement. Accordingly, when Bank of America
> transferred the loan to Carrington, the loan was in default. The transfer
> date was July 11, 2017. When the Plaintiff's loan was sold, transferred
> and assigned to Carrington on July 11, 2017, it was being treated by
> both Bank of America and Carrington as a defaulted loan. In other
> words, the loan was in default or being treated as in default when
> Carrington acquired it.

100. For example, in August and September of 2017, Carrington sent statement to the Plaintiff attempting to collect an amount note due under the note. The statements included demand for payments of alleged past due amounts which were due and said notices were inaccurate. Furthermore, Carrington sent default notices to the borrowers from August 2017 until December 2017, wherein it demanded payments be made by the Plaintiff which were not owed and demanded payments which were not authorized. These notices contained inaccurate information as well regarding escrow account balances and charges. Moreover, in September 2017, Carrington improperly accelerated the loan, demanded improper amounts be paid by the Plaintiff, and threatened an improper foreclosure sale not authorized by the mortgage contract or the law. All of these examples are numerous violations of the FDCPA as noted above. In December 2017 and January 2018, [a] Carrington customer service representative, used abusive and derogatory language including curse words during a collection call with the Plaintiffs. During that same call, the representative threatened to have the Plaintiff arrested and charged with a crime if they failed to pay the past due amount on their mortgage.

(Doc. 18 at 24-25).

The major problem for Jones is that the evidence does not support the allegations of the amended complaint. The entire claim is premised upon the fact that Bank of America and Jones entered into a loan modification in July 2015, but the evidence does not support this premise. In fact, there is no evidence that Bank of America and Jones ever came to an agreement on a loan modification in 2015. Instead, Jones testified that he never received anything in writing from Bank of America regarding these conversations about a modification to lower his payments, and a modification was never granted. (Jones Dep. at 81-82, 106-07). He clearly

testified that he and Bank of America "never came to an agreement" regarding this loan modification. (*Id*. at 82).

Additionally, there is no evidence that the notifications sent by Carrington did not state accurate facts as to the amount owed by Jones. Specifically, Jones testified that the amounts stated by Carrington as due and owing by him were correct. (Jones Dep. at 90-92). Despite Jones's counsel's statement in his brief to the contrary, (*see* doc. 58 at 25), there is no evidence that Carrington attempted to collected on an inflated amount of money. Again, unsupported statements by counsel in a brief are not evidence. *Skyline Corp.,* 613 F.2d at 1337. Jones fully admitted that he was in default throughout the entire time Carrington has serviced the loan and that he did not make even one payment to Carrington. (*Id*. at 21, 85-86). Further, there is no evidence in the record of any abusive phone calls, or any phone calls at all, that occurred between Jones and a representative of Carrington. In short, Carrington's motion for summary judgment on this claim is due to be granted.

## B. The State Law Claim

There is one remaining state law claim for breach of contract, brought against both Bank of America and Carrington. (Doc. 18 ¶¶ 38-44). Defendants contend that these claims fail because there is no evidence that Jones performed under the contract. (Doc. 49 at 7-8). Even assuming Jones' performance, Defendants contend

that Jones' allegations are negated by the evidence. (*Id*. at 8-10). The court agrees with Defendants.

"The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009) (internal quotations and citations omitted). Jones' claims against both Bank of America and Carrington fail for the simple reason that Jones did not perform under the contract. Specifically, Jones admitted repeatedly in his deposition that he failed to make regular monthly payments, that he has not made a payment since 2016, and that he has never made a payment to Carrington. (*See* Jones Dep. at 21, 25-26, 37-38, 85-86). The payment history provided by Bank of America shows that Jones has consistently been at least over a year behind in his mortgage payments. (*See* doc. 50-6). For this reason alone, Jones' breach of contract claims against both Defendants fail.

Jones ignores this salient fact in his opposition to summary judgment (*see* doc. 58 at 9-23), and instead argues that Bank of America breached the contract based on Jones' belief that Bank of America promised to implement a loan modification in 2015, and that this belief, coupled with the filings in the bankruptcy court was an enforceable contract under Alabama law. (Doc. 58 at 10). This argument is nonsensical. First, the evidence is clear that Bank of America and Jones never

entered any loan modification during this time period. In fact, Jones unequivocally testified that he and Bank of America "never came to an agreement" regarding the 2015 modification,[8] (Jones Dep. at 82), and the statement in his brief that "Bank of America agreed to give him [a loan modification]," (doc. 58 at 10), is directly contradicted by the evidence in the record. Second, Jones testified that he did not have any documents regarding these alleged conversations and/or promises to implement a modification. (*Id*. at 81, 106-07). The statute of frauds, however, mandates that any agreement involving "lend[ing] money or delaying or [forbearing] the payment thereof" be memorialized in a writing "expressing the considering" and be "subscribed by the party to be charged therewith." Ala. Code § 8-9-2. As such, this argument fails.

Additionally, the court rejects Jones's argument that the actions taken in the bankruptcy court somehow created or shows an intention on the part of Bank of America to implement a loan modification. While Bank of America did state in its filing in the bankruptcy court that it needed a declaration that Jones' wife no longer had any interest in the property because Bank of America was "unable to proceed with the [l]oan [m]odification" requested by Jones, (doc. 58-4 at 1), this statement

---

[8] To the extent that Jones' affidavit could be read to contradict this testimony, the court rejects it. "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs, Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

does not evidence that the loan modification ever came to fruition. Instead, Jones'
clear testimony that even after the actions by the bankruptcy court, he and Bank of
America "never came to an agreement" regarding this loan modification controls.
(Jones Dep. at 82).

As to Carrington, Jones again ignores his lack of performance and argues that
Carrington's alleged failure to comply with HUD regulations that are incorporated
into the contract constitutes a breach of contract. (Doc. 58 at 12-23). The court has
already rejected this argument in its order on the motion for judgment on the
pleadings and dismissed Jones' breach of contract claim based on the failure to
comply with HUD regulations. (Doc. 40 at 24). Alabama law does not recognize a
breach of contract claim based on failure to comply with the regulations promulgated
by HUD. *See Adams v. Bank of America, N.A*., 237 F. Supp. 3d 1189, 1198-99 (N.D.
Ala. 2017). For all of these reasons, summary judgment is due to be granted in favor
of Bank of America and Carrington on Jones' breach of contract claims.

## C.  Declaratory Judgment

In the final count of his amended complaint, Jones seeks a declaration that
Defendants breached the contract, that he is not in default on his mortgage and that
the notice of default if null and void, that Defendant "have no right or authority to
foreclose on Jones' property," and an order prohibiting them from foreclosing.
(Doc. 18 ¶ 87). The court refuses to do so as Jones has failed to establish he is

entitled to any of the actions sought.  Summary judgment is, therefore, proper as to this final claim of the amended complaint.

## V.    CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment is due to be granted in full.  An order consistent with this memorandum opinion will be entered.

**DATED** this 16th day of March, 2020.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge